Good morning. May it please the Court, Mark Young, Donahoe and Young, LLP, for Justin Schrenger and Howard Zhang, the appellants in this case. They were objecting creditors in the bankruptcy case below. Your Honors, it's important to remember that this is a pre-BAPCA case. That's because what really drives this case was the former availability before October 17th of 05 of what's commonly called the super discharge under Chapter 13. By that super discharge, a Chapter 13 debtor who fulfilled a confirmed plan could receive a discharge of even debts incurred through fraud or through embezzlement, which would be non-dischargeable under 523a, a2, and a4. That's just part of the backdrop of this case. Your Honors, after this – after the briefing in this case was concluded, the Supreme Court came down with a case which has a major impact on this Court's decision today, I believe. On February 21st of this year, the Supreme Court decided In re Marama. The citation to that is 127, Supreme Court 1105. In that case, the Supreme Court affirmed a First Circuit decision, which we had briefed in the briefing. The Supreme Court held that a Chapter 7 debtor does not have an absolute right to convert from Chapter 7 to Chapter 13. Not only is the test required the eligibility test under 109e, but in addition to that, the debtor's good faith must be tested in making that motion. Here, there was no such examination of the debtor's good faith despite the presentation to the Bankruptcy Court and then to the District Court of the debtor's good faith in converting from Chapter 7 to Chapter 13. One of the cases most heavily relied on by the appellees and also relied on by the District Court opinion was In re Croston. That was a Ninth Circuit Bankruptcy Appellate Panel decision in 2004. In that case, Your Honors, the Court held that a Chapter 7 debtor could convert to Chapter 13 as long as a debtor met the eligibility requirement under 109e. Excuse me. If it's not too late, I'd like to reserve six minutes for rebuttal. It's not too late. Thank you. That clock shows your total time. Thank you. So as long as you stop talking while there's still a number going down there, you get rebuttal. Very well. Thank you. In the Marama Supreme Court decision, the Supreme Court overruled Croston. So Croston, which was the law, at least at the Bankruptcy Appellate Panel level, at the time that the cases below were decided, is no longer good law. The Supreme Court decision in Marama clarifies that the debtor's good faith is an element of whether the debtor can convert from Chapter 7 to Chapter 13. There is also a recent case which illustrates the application of the Marama decision to such a motion. I provided a letter to the clerk with these cases cited. Yes, you got it. The case that I would refer the Court to is Inouye-Picoli, which is a September of this year decision, a district court decision, in that the district court affirmed the bankruptcy court's denial of a motion to convert, finding that although the debtor was eligible under 109E, the debtor's failure to demonstrate good faith sustained the denial of that motion. The district court looked at three factors in evaluating the debtor's good faith in the motion to convert. First of all, they looked at the debtor's representations in the schedules. In that case, the debtor had made some misrepresentations in the schedules. The court also looked at the timing of the motion. In this case, the motion was made right after 341A when it became apparent that the creditors that I represent were intent on proceeding with a 523 action in the Chapter 7 case. That was the reason for the filing of the motion to convert in the first place. The district court in the Picoli case also looked at the debtor's motivation for conversion. Again, the issue here being to escape from state court litigation, to thwart state court litigation, which had reached a point at which the debtor's answer had been stricken, and all that remained for the entry of a final judgment in the superior court was a default prove-up hearing at which the debtor could not appear. By California law, that's a one-sided hearing, that kind of a prove-up. So we were at that phase in the state court litigation when these debtors first filed the Chapter 7, and then when it became apparent that 523 could be invoked, decided to convert to Chapter 13. In addition, jumping back to the misrepresentations in the schedules, which was a factor in Picoli, a review of the schedules here shows that the debtors flip-flopped. What they did was they filed their Chapter 7 schedule showing a small deficit in their monthly income. In their monthly income over expenses, they spent a little bit more than they took in every month according to the original schedules. Then they decided to convert to Chapter 13. What did they do? They filed amended schedules, which showed a significant surplus with which they could theoretically fund the Chapter 13 plan. The problem, however, was that the amended schedules were false. The income was overstated, as shown by the debtor's own pay stubs. The debtor did not correctly state the mandatory tax withholdings that were actually being taken out of her pay. So the overstatement of the income – pardon me, the overstatement of the – the understatement of the income led to the fact that the gap between the income and the expenses was much smaller and would be insufficient to fund this plan. One other case that the – that is also a post-briefing case, which I would ask the Court to take a look at, is the case of Inree Alexander. And in that case, the Court decided to deny a motion to convert to Chapter 13 based in part on expert testimony. In this case, Your Honor, at the time of the confirmation of the plan, the bankruptcy court had before it expert testimony laying out in fine detail exactly how the Chapter 13 schedules were inaccurate and overstated the income. Nonetheless, the bankruptcy court gave that short shrift. The bankruptcy court said, have the payments been made under the plan? The first two payments, counsel represented, had been made. The bankruptcy court then said, well, the proof is in the pudding. This debtor will get a chance to perform under the plan. That is not a correct statement of the law as – certainly as it exists now under the confirmation hearing. The Court simply decided that the debtor would be allowed to make those payments. If that were the test, Your Honor, the feasibility of a Chapter 13 plan should not be viewed as a test, because there's nothing to review until later on whether the debtor makes or doesn't make payments. Well, the proof is in the pudding is a colorful phrase. It's probably not the legal standard. I would agree. However, if the debtors can legitimately say that they have more tax deductions, that their income, their take-home is therefore going to be higher because their tax would be lower, aren't they allowed to do that? I don't believe they said that in this case, Your Honor. The evidence before the Court at the time of the confirmation hearing was that the debtors' actual pay stubs did not reflect the income that was shown on the debtor's schedules. And that was uncontradicted. It was clear through the expert testimony going through the tax issues. So if the debtors had a hope for future income, that's not the same as feasibility. A hope for future income simply is not a basis on which a court may confirm a Chapter 13 plan because it's not feasible presently. Feasibility is tested at the time of the confirmation hearing. It's not to be looked at retrospectively. It's to be determined at that time. And here, at that time, the debtors simply didn't have the income which they represented to the court. It was a misrepresentation in the schedules which was designed to allow a Chapter 13 plan to be confirmed. The bankruptcy court didn't find that it was a misrepresentation? I'm sorry, Your Honor? The bankruptcy court didn't find that it was a misrepresentation? The bankruptcy court did not address the issue. The record shows the bankruptcy court simply didn't. But there was information before the bankruptcy court, though. That's correct. That's correct. The information was there for the bankruptcy court. So shouldn't we assume that the bankruptcy court considered all the information in making its decision? Many times I think that would be an assumption going in. The record in this case demonstrates that the court did not do that. This was in the summer of 2005. As the panel may be aware, bankruptcy courts were exceptionally busy at that time. This Court simply cut to the chase and said the payments are being made, the debtor is going to get a chance to perform. The Court made no serious analysis of either good faith or feasibility at either phase, at the motion phase, motion to convert phase, or at the confirmation phase. In fact, the case of Henry Warren has established that when there's the absence of any significant factual element distinguishing the circumstances of a Chapter 13 petition with where there is substantial nondischargeable debt from a liquidation under Chapter 7, the debtor's good faith is subject to a heightened degree of scrutiny. Not only was there no heightened degree of scrutiny here, there was no scrutiny whatsoever. The Court simply viewed the debtor's plan as the debtor's representation. If the debtor was going to be able to perform out of the plan, the proof was in the pudding. That's how we got to this phase where a debtor who converted from a Chapter 7 to a Chapter 13 to avoid a nondischargeable debt, who made misrepresentations in schedules, and who simply did not demonstrate feasibility, was able to confirm a plan. It's also important to note that the burden of proof on each of these issues, feasibility and good faith, is not with the creditor. Once those matters are put into issue, it's the debtor's burden to meet those tests. And the record would demonstrate, Your Honors, that there was simply insufficient evidence put on by these debtors to come anywhere near meeting their burden of proof and persuasion on these issues. If the Court has no more questions at this point, I'll reserve the remainder of my time for rebuttal. That's fine. Thank you very much. Thank you. Okay. For the Evans parties, we have Ms. Latta, is that right? Yes, Your Honors. Christina Latta for the Evans. Your Honors, I'm going to start with the Supreme Court case that my counsel just talked about. The Menara, or I might be saying it wrong, case that came down in February of this year. My opposing counsel would like to tell you that this is a case that all of a sudden changed the basis for my client's right to convert from Chapter 7 to Chapter 13. Actually, Your Honors, it did not. In that Supreme Court case, the facts of that case state that the debtors were found to be bad faith debtors found by the Court to have bad faith, and they still converted to Chapter 13 under the analysis that they had an absolute right to. And that's what was turned down by the Supreme Court. The Supreme Court said, no, it's not an absolute right for these kinds of debtors that already are showing bad faith to have the ability to avoid a nondischargeability claim in Chapter 7 and convert to Chapter 13. I would put before you, Your Honors, that this case is different. In this case, the trial court in the bankruptcy level did make an adequate finding that my clients made good faith conversion to Chapter 13. There is no evidence in the record that this was a bad faith conversion. This is a different case than the Supreme Court case. It's a different case than the Piccoli case. It's a different case than the cases that he has put before the record to say that all of a sudden things are different. Nothing is different in this case. The Evans, the trial court case under Judge Glover made a finding that there was he went through the leave-it factors for bad faith and good faith filing just as if the Monera case had already come down. Those things were already vetted. The issues that Monera said that, no, it's not an absolute conversion from 7 to 13. You have to be, one, eligible for Chapter 13 eligibility under the factors of whether or not you have the correct amount of unsecured debt or a secured debt. And, two, you have to have a good faith filing. Both of these issues were vetted in the bankruptcy court. And I would say to you, to this court, that review of the findings in the bankruptcy court should be reviewed for erroneous errors only that are clearly erroneous, and it should not be for this court to go back and review this record and then make determinations about what's good faith and what's bad faith. I'd like to turn the Court, actually, to document number 13. We're actually page 190. If you look here on this page, let's see if I've got the right page on this. Actually, 189 and 190. At the bottom of 189, line 19, the Court goes into a discussion about the good faith. It says, The good faith standard that's been set by this circuit is very cautiously applied. Because some of those requirements standing alone don't make any sense on their own. For instance, almost all bankruptcy cases are filed, or a big portion of them, because somebody's suing the debtor. And that doesn't make sense to me. What else is the debtor going to do except propose what they can afford to pay? He says what they can. And why would a debtor ever want to say, okay, let's let the litigation in state court go forward, take all those risks, and so forth? The Court goes on, and it makes it very clear that he did look at all the factors of the Levitt case, and there are four factors. So totality of circumstances case. Just because you may have bad faith on one factor does not mean you're going to meet the totality of circumstances for bad faith. And I would put before this Court that there is perhaps only one factor in the Levitt case that comes anywhere close to bad faith. The opposing counsel would like this Court to find that they misrepresented information on the schedules. They didn't misrepresent on the schedules. All they did is amend the schedules. Amendments in bankruptcy are freely allowed. The kinds of things that were misrepresented in the Supreme Court, in the recent Supreme Court case and in the Pecola case and so forth, were misrepresentations of assets, assets that weren't disclosed. Assets were things that were being hidden from the Court, hidden from potential creditors that would be assets that would be liquidated. That's not the case here. We're talking about a simple amendment of schedules. Nothing changed. It's not like the debtor didn't say they had a job that they didn't have. It's not – there's nothing here in the income or the expense schedule I and schedule J to think that there's any misrepresentation. And I'd like to point out one more thing, Your Honor, on the amended schedule I in income. If you look at the very bottom of that, and that is document number 10 in the exhibits, if you look at the bottom of page 164, you will see at the bottom that Justin E. Evans anticipates an increase in income three times per year at $2,500 per term for a teaching contract with Whitman College. Now, he had a situation where he was going once a term and he was teaching for a certain amount of time. It wasn't a regular income thing. It wasn't a wage thing. So it wasn't listed on the top part of the schedules. But it's there. So I would say to this Court that the idea that it was misrepresented or that enough tax withholdings weren't withheld is not true because there was other income coming in. And how is this Court supposed to make a determination whether the tax withholdings are true or not when that additional income is coming in? And who knows what their withholdings are going to be? The other thing I'd like to address is the feasibility issue. As this Court knows, this is a consolidated appeal. There were actually two appeals, both of which affirmed the decisions of the bankruptcy court, one at the district court, one at the bankruptcy appellate panel. And he made the opposing counsel made the assertion that there's insufficient evidence here that the court actually looked at bad faith. I agree with this panel's questions. There were evidence before the court. The court asked for additional evidence before things were done. And they had four hearings on financial matters in this case, three hearings that dealt with the conversion from Chapter 7 to Chapter 13, and one on the confirmation of the Chapter 13 plan. Evidence was before the court of the financial abilities of my clients to go forward. Evidence was before the court of bad faith at each stage of those hearings. The court had full opportunity to look at opposing declarations, opposing evidence about whether or not there was bad faith conducted here. And I would assert to this panel that the court did make that decision and concluded that there was good faith here, and there was no other issue for it to consider. Also, as far as the standard for feasibility of a Chapter 13 plan, feasibility of a Chapter 13 plan, as the bankruptcy appellate panel says clearly, has to do with a Chapter 13 trustee evaluating the income, evaluating the expenses, and evaluating the ability for a debtor to complete a plan. In this case, all that evidence was before the court. It was proven that the debtor had regular income. The wife, Ms. Evans, was working at the Gap. You can't get more regular income than that. She was a wage earner. The husband, yes, he was working on a quarterly basis, and his income might not have been as regular, but no one said that a couple together had to both have wage income. The question is regular income, and they certainly met that test. And so back to the feasibility issue. The bankruptcy court also questioned, and we were laughing before about the proof in the pudding test, that is before the court. The payments were being made, and as of today, we're 24 months into plan payments in the Chapter 13. Obviously, these payments could be made by these debtors because they're still in Chapter 13, and they've made every one of them. One other issue that wasn't brought up that I would like to address is liquidated claim. The opposing counsel in his briefing likes to make a very, likes to put a lot of emphasis on the fact that a proof of claim was filed and was not objected to. The standard in the bankruptcy court about whether or not you're eligible for a Chapter 13 filing includes the amount of unsecured debt, and that threshold for unsecured debt at the time of this case was in the range of $307,000. If you included the proof of claim that the Schrengers submitted along with the other debts, which, by the way, were close to $150,000, the idea that they only filed bankruptcy for the State court claim is not true. There were plenty of other reasons to file bankruptcy. So, again, including the Schrenger claim put them over that debt limit. Put them to $385,000. But the issue of whether you're over or under that debt limit has to do with whether a claim is liquidated or unliquidated. Now, liquidated or unliquidated is undefined in the code. The only way we can look at whether the liquidation standard is by looking at case law. And the main case on the subject is in re slack. And when you look at a liquidated claim, the things that we are looking at is whether it can be readily determinable. In this case, we have a proof of claim that merely states cash payments are owed of $106,000, defamation claim or interference with business claims of $100,000, and court costs of $4,098.00. I would submit to this court that the only claim here that is actually known or litigated is most likely the court costs at $4,098.00. This is a one-page proof of claim that just stated these numbers, attached the complaint from the California, California court. The Judge Overstreet, in her rulings and in her directions to the court, asked specifically in, on page 155 of the transcript, in document 9, she asked specifically for the kind of information she would need to see that this is a liquidated claim. She asked for things such as a spreadsheet. She asked for they didn't even provide information of, you know, where these cash payments of $106,000.00 were. I think they could have come up with something to say how they came up with $106,000.00. Who knows? The other claims are defamation. How do you calculate defamation? The court asked. They had two bites at the apple. They actually separated into a specific hearings to deal with this for the court to ask for additional evidence. Every time they asked for additional evidence, it wasn't given. I would submit to this court it wasn't given because there was nothing to give. It was an unliquidated claim. And as a liquidated claim, my clients were eligible under the 109E statute of the Bankruptcy Code to be Chapter 13 debtors. Thank you very much. Thank you, Ms. Lara. Now, Mr. Young, you have some rebuttal time. By way of rebuttal, the notion that the Chapter 13 is not inappropriate because of the involvement of state court litigation, the bankruptcy court did say many cases are filed because, quote-unquote, somebody is suing the debtor. Undoubtedly, that's true. In this case and in the Guastella case, the proceedings were at a point where there was about to be a liquidated judgment entered. This was an instance where there had been litigation proceeding for 19 months. The debtor's answer, after repeated discovery abuses, failure to obey discovery orders, his answer was stricken by the superior court. All that was left to do was to have a simple and uncontested default prove-up hearing. Under the standard adopted by this court in the ---- That doesn't mean anything. I'm sorry? That doesn't mean anything. What doesn't mean anything? A simple, uncontested hearing. Well, that's the language that the Weinberger panel in a decision ---- No, that which you're characterizing is a hearing in state court. That's correct. And there's no guarantee what the amount would be in state court. You think that the superior court judge is just going to go in there and say, What do you want? $100,000 for defamation? You've got it. No, certainly not. That's not how it works. No, certainly not. I was a state court judge at one time, and I did hundreds of default prove-up hearings. And I'm going to tell you, there were people who walked out of the courtroom without any money at all. Zero. Certainly. Zero, because they couldn't prove up their claim. Right. But the standard under the Weinberg case is whether ---- if a claim is unliquidated, if getting to that claim would require a contested evidentiary hearing, it is ---- I see you're shaking your head. I'm quoting from the Weinberg case. I don't find this argument at all getting you very far. Well, very well. The Weinberg case does say that the distinction on rating determination turns between whether it's a simple hearing to determine the amount of a debt versus an extensive and contested evidentiary hearing. And here, the hearing that was necessary would certainly not be contested, and it would not be extensive. And, indeed, I'm sorry. But for defamation of characters, Judge Pius has indicated, they have a claim ---- they say they have a claim for a hundred and some thousand for defamation. But certainly, until there's been evidence presented, that's an unliquidated claim. Well, under the Weinberg standard, I would submit that it's not, because all it requires at this phase of litigation, certainly if it was the beginning of the case, if it was a complaint even filed that was still going on, absolutely, it would be unliquidated. Well, here we have ---- There was no evidence to establish any part of that claim. Well, the bankruptcy court, Your Honor, later on did liquidate this claim. For $200,000. The court established this claim, liquidated in this case for $200,000. It was a very simple hearing. It was a short hearing. The claim was for $210,000 some dollars. The bankruptcy court liquidated it at $200,000. What, did they ever get a claim in ---- did they ever get a prove-up judgment in Superior Court? No. No. In fact, the bankruptcy court had said, you need to do this here. You can't do it in Superior Court. I will deny in advance a motion for relief from stay in order to go to Superior Court to do your default prove-up. Therefore, there was a ---- there was a claim, there was an objection, there was a hearing. The court liquidated the claim in a matter of minutes at $200,000. So apparently, the notion that this was an unliquidated claim, it was unliquidated until there was a hearing. Didn't he just establish the amount of the claim? It did, $200,000. But it wasn't liquidated. Well, I ---- my understanding of liquidated is that that's the amount. Is there a difference between the amount and ---- Well, I thought that he's just ---- they're just fixing the amount of the claim at $200,000. Is that ---- I would ---- I would submit, Your Honor, that's the definition of liquidating the claim. I'm not so sure. You liquidate the claim and fix the amount. So, again, this was an instance not of just somebody suing the debtor. In fact, this was the only lawsuit pending against the debtor at the time, and this lawsuit was at the point of having a default judgment entered against the debtor. His answer had been stricken. But we still have to look at as of the time of the conversion, not as to what subsequently happened. Correct. As of the time of the conversion, the ---- It was unliquidated. Well, under the Weinberg standard, I don't think so, because it was at a point where all that was needed was a simple, uncontested hearing, which is what Weinberg states. With evidence to establish what dollar amount ought to be awarded for defamation. And how does that ever become liquidated until such a decision is made? Your Honor, the Weinberg standard does not say that the court has to have already decided what the amount was. What it says is that if the hearing needed to establish that amount is a simple, uncontested hearing, then under Weinberg, the claim is liquidated. Were that not the case, any time a debtor files a bankruptcy proceeding before an entry of final judgment, the claim would be unliquidated. In the Gula Stella case cited in the briefs, a similar situation occurred. In that case, a State court entered a tentative decision, which was not final. After entry of the tentative decision, the debtor filed his bankruptcy petition, and the court said, this claim is liquidated. Although there was no final judgment, there was this tentative hearing. The debtor filed expressly to insulate the debtor from the effect of that final State court judgment. Very similar situation here. The debtor's answer had been stricken with prejudice. The debtor did not appeal that decision from the State court. So under the rules of the statute, there was nothing pending in terms of the order to strike the answer. There was no writ attempted. That decision was still operative at that time. So there was no ability of this debtor to contest the amount of the claim. All that was left was for the judgment creditor, or the soon-to-be judgment creditor, to submit his evidence to establish the amount of the claim in a simple and, by definition, uncontested hearing, which I believe is what the Weinberg decision talks about in terms of whether a claim is liquidated. I'll take another look at the Weinberg decision. Because I don't have the experience of Judge Pius trying California cases on this issue, but as a practicing lawyer, we often had issues of whether a claim was liquidated, which in common law affected whether you could collect interest in a lot of jurisdictions. And usually the standard seemed to be whether the amount was readily ascertainable, was it fixed or known or ascertainable by some type of computation, as opposed to there being a simple hearing. So I'm not – I'm not initially certain how – what the scope of the Weinberg standard is that you're urging. I'm just reading what the Weinberg decision says, Your Honor. It requires a, quote, ready determination. And the difference between a ready determination and not is whether it's a simple hearing as opposed to an evidentiary contested hearing. There would not be a contested hearing in this case. The evidence would be submitted for a default prove-up would be the evidence submitted by the party seeking the judgment. That was thwarted here by the filing of this Chapter 7 case, later converted to a Chapter 13. So the issue of liquidation is an important issue in this case. It is certainly not the only issue. It's not the only reason why the decisions made by the bankruptcy court were in  The levit factors, which are the controlling issues about bad faith. There are four levit factors. Three of them were present here, Your Honors. The misrepresentations of fact in the schedules, as demonstrated, the debtor had originally said we have a deficit, we have a monthly deficit in our – in our income over expenses. Later on, they came back with schedules saying we now have the surplus, but the surplus was false because the debtor's own pay stubs show that the debtor did not have that income. The factor on whether the debtor intends to defeat State court. Your time is up, but we'll give you an extra minute to finish your discussions. Thank you. I appreciate that. The other issue that was clearly present was whether the debtor intended only to defeat State court litigation. The debtor's own testimony, as shown by the DiLeo Declaration in the excerpts of records, is that the debtors had no other collection issues, no other foreclosures, no other pending reason to file a bankruptcy proceeding at the time that they filed it. That was the debtor's own statements. The debtor's schedules show that this is certainly – the three claims related to this, the Deep Magic, the Schrenger, and the Zinklins, were the major claims against these debtors. So there was no other reason for these debtors to file, and indeed, they did successfully thwart the State court litigation. Finally, whether egregious behavior is present. That's the second matter. This is an instance where there was egregious behavior before and during the Chapter 7 case. The debtor played discovery games, refused to cooperate with discovery, eventually suffered the ultimate terminating sanction in the superior court. Egregious behavior present there. Then filing schedules. We're going to have to bring the argument to a close. Very well. Because we've got people with plain schedules. We appreciate the argument. I will conclude it. Schrenger v. Evans shall be seated. Thank you. And we thank you very much.
judges: Gould, Paez, Strom